**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF ARKANSAS**
**FAYETTEVILLE DIVISION**

**ROBERT A. BRADIC** **PLAINTIFF**

**v.** **CASE NO. 5:26-CV-05253**

**EMERGENT LABS, INC.** **DEFENDANT**

**MEMORANDUM OPINION AND ORDER**

On September 25, 2026, Plaintiff Robert A. Bradic filed a Complaint (Doc. 2), Motion for Leave to Proceed *in forma pauperis* ("IFP") (Doc. 7), Motion for Service (Doc. 3), and a Motion for Temporary Restraining Order and Preliminary Injunction (Doc. 4). Mr. Bradic's IFP application and Motion for Service were granted by the Honorable Mark E. Ford, United States Magistrate Judge for the Western District of Arkansas, on October 7, 2026. For the reasons that follow, the Court **DENIES IN PART** and **DEFERS IN PART** the Motion for Temporary Restraining Order and Preliminary Injunction (Doc. 4).

## I. BACKGROUND

Mr. Bradic asserts claims against Emergent Labs for breach of contract and misappropriation of trade secrets under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836. The Complaint alleges that, prior to his relationship with Emergent Labs, Mr. Bradic "developed nonpublic source code, implementation rules, data structures, and combinations within the Equilibrium-AI ecosystem" and that Mr. Bradic "used account controls and task-specific permissions to limit access" to this material. (Doc. 2, p. 4). The Complaint further alleges that Mr. Bradic entered into a "limited builder relationship" with Emergent Labs in which Emergent Labs "received access [to the material] for limited builder tasks." *Id.* However, Mr. Bradic asserts that this relationship "did not transfer ownership or authorize acts beyond the permission granted"

and that "an agreement governing [Emergent Lab's] builder work and project data" placed "task-specific limits on authorized files and acts." *Id.* Mr. Bradic claims that Emergent Labs exceeded its authority under the agreement and misappropriated his trade secrets during an alleged "repository merge" and seeks injunctive and declaratory relief, as well as monetary damages. *Id.*

In the instant Motion, Mr. Bradic requests this Court to immediately enjoin Emergent Labs from:

- "publishing, deploying, licensing, selling, transferring, materially modifying, commercializing, or representing ownership of the precise works and source materials identified";
- "accessing or attempting to access Plaintiff's personal devices, email, domains, repositories, cloud services, accounts, or credentials"; and
- "transmitting or publishing a communication as authored or authorized by Plaintiff unless Plaintiff actually authored or expressly authorized it."

*Id.* at 2. Mr. Bradic further requests that the Court order Emergent Labs to:

- "preserve in native form the Covered Materials and all related repositories, branches, commits, pull requests, forks, workspaces, prompts, outputs, databases, deployments, logs, authentication events, account records, billing records, communications, backups, snapshots, archived records, and disaster-recovery copies";
- "suspend routine deletion, log rotation, retention expiration, overwriting, branch deletion, account closure, automated cleanup, backup destruction, and other processes that could alter or destroy evidence relevant to ownership, authorization, access, custody, attribution, copying, deployment, transfer, or continued possession";

- "preserve any identified deployment containing Covered Materials and, if presently accessible, suspend public availability without deleting or altering the deployment or its records";
- "identify the custodians, accounts, environments, repositories, deployments, and third-party services reasonably believed to possess or control Covered Materials"; and
- "preserve native copies and metadata for disputed communication."

*Id.* Finally, Mr. Bradic requests an expedited evidentiary hearing for issuance of a preliminary injunction under Rule 65(a).

## II. LEGAL STANDARD

Rule 65 of the Federal Rules of Civil Procedure governs requests for injunctive relief. Granting an *ex parte* temporary restraining order is only justified if it clearly appears from specific facts shown in a verified complaint or affidavit that "immediate and irreparable injury, loss, or damage will result" unless relief is granted prior to the receipt of oppositional briefing and a hearing. Fed. R. Civ. P. 65(b). "*Ex parte* temporary restraining orders are no doubt necessary in certain circumstances, but under federal law they should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Bhd. of Teamsters*, 415 U.S. 423, 439 (1974) (internal citation omitted). Moreover, such orders are improper when it has not been shown "that it is impossible to serve or notify the opposing parties and to give them an opportunity to participate." *Carroll v. President of Comm'rs of Princess Anne*, 393 U.S. 175, 180 (1968).

If a moving party fails to establish grounds to issue an *ex parte* temporary restraining order under Rule 65(b), a court may still grant preliminary injunctive relief under Rule 65(a) "on notice to the adverse party." "The purpose of a preliminary injunction is merely to preserve the relative

positions of the parties until a trial on the merits can be held." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). The standard for analyzing a request for a temporary restraining order ("TRO") is the same as for a preliminary injunction. *Tumey v. Mycroft AI, Inc.*, 27 F.4th 657, 665 (8th Cir. 2022). The Court must consider the following factors: "(1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest." *Ng. v. Bd. of Regents of Univ. of Minn.*, 64 F.4th 992, 997 (8th Cir. 2023) (quoting *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981) (en banc)). Preliminary injunctive relief is "an extraordinary remedy" and "the party seeking injunctive relief bears the burden of proving all the *Dataphase* factors." *Watkins Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003).

## III. DISCUSSION

To date, Emergent Labs has not appeared in the case at bar, making the instant motion subject to the requirements for a TRO under Rule 65(b). With that in mind, Mr. Bradic has not certified to the Court any efforts made to give notice of its TRO filing to Emergent Labs or reasons why notice should not be required pursuant to Rule 65(b)(1)(B). Mr. Bradic's IFP application and Motion for Service were granted in this matter on October 7, 2026, and the Clerk of Court issued a Summons (Doc. 9). There is no indication in the record that notice of the pending motion for TRO has yet been given to Emergent Labs. The Court is not persuaded that these filings alone satisfy Rule 65(b)(1). Even had Mr. Bradic's motion satisfied the requirements of Rule 65(b)(1), the Court concludes that Mr. Bradic has failed to set forth a sufficient factual or legal basis for the issuance of an *ex parte* TRO before receiving oppositional briefing or holding a hearing.

First, Mr. Bradic has not established that he is likely to prevail on the merits. "While no single factor is determinative, the probability of success factor is the most significant." *Home Instead, Inc. v. Florance*, 721 F.3d 494, 497 (8th Cir. 2013) (citation modified); *see also Jet Midwest Int'l Co., Ltd. v. Jet Midwest Grp., LLC*, 953 F.3d 1041, 1044 (8th Cir. 2020) ("Success on the merits has been referred to as the most important of the four factors."). When assessing whether to issue preliminary injunctive relief, the Court must consider whether the movant has put forth enough evidence to show it has at least a "fair chance of prevailing" on the merits of its claims. *Planned Parenthood Minn., N.D., S.D. v. Rounds*, 530 F.3d 724, 732 (8th Cir. 2008) (en banc). A "fair chance" under *Dataphase* means "something less than fifty percent." *Id.* at 730; *see Fennell v. Butler*, 570 F.2d 263, 264 (8th Cir. 1978) ("If the balance tips decidedly towards the plaintiffs and the plaintiffs have raised questions serious enough to require litigation, ordinarily the injunction should issue."). "[T]he absence of a likelihood of success on the merits strongly suggests that preliminary injunctive relief should be denied." *CDI Energy Servs. v. W. River Pumps, Inc.*, 567 F.3d 398, 402 (8th Cir. 2009). Here, at least at this preliminary stage, the Court determines that Mr. Bradic has failed to demonstrate a likelihood of success on the merits on either of his claims.

Turning first to the trade secrets claim, a claim under the DTSA requires showing "the existence of a protectable trade secret and misappropriation of that trade secret." *MPAY Inc. v. Erie Custom Comput. Applications, Inc.*, 970 F.3d 1010, 1016 (8th Cir. 2020). The DTSA defines a "trade secret" as "information" that "the owner thereof has taken reasonable measures to keep . . . secret" and that "derives independent economic value." 18 U.S.C. § 1839(3); *see also Farmers Edge Inc. v. Farmobile, LLC*, 970 F.3d 1027, 1033 (8th Cir. 2020) ("Such information only qualifies as a trade secret if the owner has 'taken reasonable measures to keep such information

secret' and the information has economic value." (quoting *CMI Roadbuilding, Inc. v. Iowa Parts, Inc.*, 920 F.3d 560, 564 (8th Cir. 2019))). "Misappropriation" can occur in various ways, including: (1) "acquisition of a trade secret . . . by a person who knows or has reason to know that the trade secret was acquired by improper means," such as "breach . . . of a duty to maintain secrecy" or (2) "disclosure . . . of a trade secret of another without express or implied consent by a person who . . . at the time of disclosure . . . knew or had reason to know that the knowledge of the secret was . . . acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret." 18 U.S.C. § 1839(5)–(6).

Here, Mr. Bradic claims that he developed "nonpublic source code, implementation rules, data structures and combinations within the Equilibrium-AI ecosystem" and "used account controls and task-specific permissions to limit access" to such information. (Doc. 2, p. 4). He alleges that Emergent Labs gained access to this information in order to perform "limited builder tasks" pursuant to an "agreement" between the parties—which provided "task-specific limits on authorized files and acts"—but that Emergent Labs exceeded the scope of its authority under this agreement through unauthorized "repository activity," including "damage-control commit and security-log material" and a "pull request . . . attribute[d] . . . to an Emergent automated system." *Id.*; (Doc. 4, p. 3). However, Mr. Bradic failed to provide the Court with evidence of the alleged agreement for consideration with his TRO motion and, instead, stated in his Complaint that "[t]he governing platform terms and complete instructions are matters for discovery." *Id.* Likewise, Mr. Bradic did not provide record documentation of this alleged repository activity.

Based upon the limited evidence presented, the Court cannot determine whether Mr. Bradic took reasonable efforts to maintain the secrecy of the information he alleges to be trade secrets nor determine whether Emergent Labs misappropriated such information. If anything, the evidence

before the Court suggests that Mr. Bradic shared the relevant information with a third-party contractor and has provided no evidence outside of conclusory statements that Emergent Labs had an obligation to keep it confidential or that it otherwise used the information in a manner that it is likely to constitute misappropriation under the DTSA. Similarly, the Court is unable to assess whether Mr. Bradic's breach of contract claim has a fair chance of prevailing on the merits without the opportunity to review said contract.

More importantly, the Court finds that Mr. Bradic has failed to "demonstrate that irreparable [harm] is *likely* in the absence of an injunction." *Sierra Club v. U.S. Army Corps of Eng'rs*, 645 F.3d 978, 992 (8th Cir. 2011) (emphasis in original). "In order to demonstrate irreparable harm, a party must show that the harm is certain and great and of such imminence that there is a clear and present need for equitable relief." *Arnzen v. Palmer*, 713 F.3d 369, 374 (8th Cir. 2013) (quoting *Iowa Utilities Bd. v. F.C.C.*, 109 F.3d 418, 425 (8th Cir. 1996)). "'[T]he fact that a single trade secret may be disclosed is enough' to establish irreparable harm because 'once a trade secret is disclosed, its secrecy is lost forever.'" *Revenue Mgmt. Sol., LLC, v. Com. Bank*, 183 F.4th 618, 625 (8th Cir. 2026) (quoting *Cigna Corp. v. Bricker*, 103 F.4th 1336, 1346 (8th Cir. 2024)). However, "[a] party may not make bare-bones assertions hoping that we will do its work for it by developing the argument and putting flesh on its bones." *Revenue Mgmt.*, 103 F.4th at 626 (quoting *Jacam Chem. Co. 2013, LLC v. Shepard*, 101 F.4th 954, 963 (8th Cir. 2024)). Even assuming the existence of trade secrets, Mr. Bradic has provided no evidence of a clear and present threat that Emergent Labs may disclose the relevant information. Rather, Mr. Bradic provided an email sent to him on July 26, 2026, from "Emergent Support," which states in part:

> We have reviewed your account and would like to reassure you that your projects, source code, prompts, databases, files, and other account data remain secure and private. Your project data is isolated within your account and is not publicly exposed or accessible to other users.

> We also want to assure you that we do not use your private project code, files, prompts, databases, or application data to build, operate, commercialise [sic], or develop applications for other customers. Your projects remain associated with your account and are not shared with other users.
>
> Additionally, we do not make changes to your jobs, projects, deployments, or account without an action being initiated by you or as part of resolving a support request that you have explicitly requested. Your projects are not modified, forked, renamed, or altered without your interaction or authorisation [sic] through the platform.
>
> . . .
>
> Your code, project files, databases, and related data continue to be stored securely and are handled in accordance with our security and privacy practices. They are not publicly available simply because a project exists on the platform, and they are not exposed to other customers.

(Doc. 4-1, p. 8). With that in mind, the Court finds that Mr. Bradic has failed to show any threat of irreparable harm or disclosure of the purported trade secrets. The Court need not reach the third and fourth factors in the TRO analysis because, assuming without deciding that those factors favor a TRO, they would nevertheless be outweighed by the unlikelihood of success on the merits and lack of imminent, irreparable injury to Mr. Bradic. Thus, Mr. Bradic has not set forth a sufficient factual or legal basis for the issuance of an *ex parte* temporary restraining order. He has failed to carry the burden of persuasion and failed to demonstrate that exceptional circumstances exist to justify such an extraordinary remedy, and his request for TRO is therefore **DENIED**.

The Court will reserve ruling on Mr. Bradic's request for a preliminary injunction until Emergent Labs has had an opportunity to submit a response. There is no indication in the record that Emergent Labs has been served with the summons and complaint or any other pleadings to date. Emergent Labs shall have ten (10) days upon service and receipt of Mr. Bradic's motion to file a response. Upon receipt of a response from Emergent Labs, the Court will give consideration

to scheduling a hearing to address the issues raised in the motion seeking injunctive relief. The parties are specifically instructed to address the *Dataphase* criteria that this Court must consider in determining whether a preliminary injunction should be issued.

## IV. CONCLUSION

For the reasons stated, **IT IS SO ORDERED** that Plaintiff Richard A. Bradic's Motion for Temporary Restraining Order and/or Preliminary Injunction (Doc. 4) is **DENIED IN PART** and **DEFERRED IN PART.**

**IT IS SO ORDERED** on this 9th day of October, 2026.

/s/ David Clay Fowlkes
DAVID CLAY FOWLKES
UNITED STATES DISTRICT JUDGE